**Jennifer J. Middleton**, OSB No. 071510
jmiddleton@justicelawyers.com
**Caitlin V. Mitchell**, OSB No. 123964
cmitchell@justicelawyers.com
JOHNSON JOHNSON LUCAS & MIDDLETON PC
975 Oak Street, Suite 1050
Eugene, OR 97401
Tel: 541-484-2434
Fax: 541-484-0882
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| ELIZABETH ANNE DEVAN-SONG,<br><br>                      Plaintiff,<br><br>v.<br><br>OREGON STATE UNIVERSITY and PENELOPE DAUGHERTY,<br><br>                      Defendants. | Case No.:<br><br>**COMPLAINT**<br><br>Violation of Title IX, 20 U.S.C. § 1681; U.S. Const., Amendment 1; ORS 659.852; Oregon Const. Article 1, section 8<br><br><u>Demand for Jury Trial</u> |

**INTRODUCTORY STATEMENT**

**1.**

Defendant Oregon State University (OSU) took Plaintiff Anne Devan-Song's complaints of gender-based harassment by a fellow graduate student and failed to resolve them. Instead, it tried to end the problem by discharging her from the lab where she worked with the harasser and terminating her advisor/advisee relationship with the professor who advised them both. Plaintiff Devan-Song responded by speaking publicly about her experiences and advocating for change in the systems at OSU. OSU charged her with violating the Student Code of Conduct because of

Page 1 - **COMPLAINT**

that speech and conducted a 10-month investigation. Its outcome is still unknown. This is an action against OSU for retaliation in violation of Title IX, the First Amendment, and the Oregon Constitution and laws.

## JURISDICTION & VENUE

2.

This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2).

## PARTIES

3.

Plaintiff Anne Devan-Song is a Ph.D. candidate at Oregon State University in its department of Integrative Biology. She is a citizen of Singapore and a resident of Corvallis, Oregon. She is multi-racial, of Asian descent.

4.

Defendant Oregon State University is a public university in Corvallis, Oregon. It receives federal funding and it also financed in part by monies appropriated by the Oregon Legislative Assembly.

5.

Penelope Daugherty at material times was the Interim Director of EO Investigations within the Office of Equal Opportunity and Access at Oregon State University. She is sued in her personal capacity.

## FACTUAL ALLEGATIONS

6.

Plaintiff Anne Devan-Song came to Corvallis to pursue her Ph.D. in Integrative Biology at Defendant OSU. She selected OSU because a professor in the department (Professor 1) who

studies disease and movement ecology had recruited her to come work with him. She was eager to study collective behavior, and the ecology of cities particularly from a disease perspective and excited by his movement ecology and complex systems research, start-up funding, and available data.

**7.**

Devan-Song was assigned a two-person office to share with another graduate student in the professor's lab ("Student 1"). Within the first few weeks, Devan-Song noticed Student 1 behaving in overly sexualized ways toward women in the department, including unwanted physical touching. She became highly uncomfortable around him and on guard.

**8.**

Devan-Song moved out of their shared office because of her discomfort and worked instead in the shared lab space a few doors down the hall.

**9.**

For the next several months, Student 1 displayed persistent, unwanted, harassing and controlling behaviors toward Devan-Song. He repeatedly insisted that she move back into their office. He demanded she spend a weekend with him cleaning the office. He re-arranged what had been her desk in the office and moved the furniture around. He repeatedly questioned why she moved out and would not return. He asked her friends why she moved. He had her friends wait for her in his office so that she would have to come inside in order to see them. He followed her into the lab, peered at her through the glass, and called or facetimed her when she was working in the lab, forcing her to interact with him. He told her to give him her homework, because he wanted to complete it for her.

**10.**

Student 1 did not treat male graduate students with such persistent, unwanted attention or demands.

**11.**

Devan-Song dropped classes to avoid being in the same room as Student 1. She decided not to pursue a minor in Biological Data Science because he was also taking it. She avoided social situations where he would be present. She hoped to minimize contact so that they could both successfully occupy Professor 1's lab over the next five years.

**12.**

In or around March 2018, Devan-Song went to Professor 1, their shared advisor, for assistance in managing the harassment she was experiencing from Student 1. She reported his stalking-like, controlling behaviors and how distressing they were to her. Professor 1 defended Student 1, saying "he just likes you," and, "he has a different love language from you."

**13.**

Professor 1 advised Devan-Song that she needed to communicate her boundaries to Student 1. She attempted to do this, but it only made the situation worse. It suggested the problem was her fault for not having communicated effectively and that she needed to take care of Student 1's hurt feelings. She became afraid of interacting with Student 1.

**14.**

Devan-Song followed up with Professor 1 and told him it did not go well. He responded with hostility. He told her she should not have reported the harassment to him and that it was not "real" sexual harassment. He said he felt very protective of Student 1 and that she was "overthinking" things. He said she had put him and his lab in a difficult position by telling him about Student 1's conduct toward her.

**15.**

OSU policy requires "responsible employees," including Professor 1, to report gender-based harassment to OSU's Equal Opportunity & Access, but Professor 1 did not report. Instead, Professor 1 continued encouraging contact and scheduled them to be together in the lab.

**16**.

Devan-Song's mental health deteriorated. She displayed symptoms of trauma, experienced sleeping and eating disorders, depression, anxiety, and suicidal thoughts. She sought out counseling. She went to other professors in the department who successfully moved her into a different office and made sure she did not have to teach with Student 1.

**17.**

In or around August 2018, Devan-Song went to EOA and reported the harassment. EOA associate Hope Brian told Devan-Song that what she described was "textbook" sexual or gender-based harassment and wrote up the intake as a Title IX report of sexual or gender-based harassment.

**18**.

Devan-Song did not request a formal investigation but instead opted for an informal resolution. She did not want any punitive measures taken toward Professor 1 or Student 1 and wanted to maintain a good working relationship with Professor 1.

**19.**

EOA allowed Student 1 to work with Professor 1 to come up with terms for his interactions with Devan-Song and hers with him, which was alarming to Devan-Song. EOA made a proposal for a "voluntary resolution agreement." Devan-Song did not want to sign it immediately, but she asked EOA for an electronic copy so she could work with it and understand

it better. She proposed a restorative justice session. EOA did not provide an electronic copy and did not respond to Devan-Song's proposal for restorative justice. Instead, EOA closed the case in late November 2018.

20.

On or about December 1, 2018, Professor 1 gave Devan-Song an excellent annual review of her academic progress and wrote that he enjoyed collaborating with her on research projects.

21.

On or about January 8, 2019 Devan-Song informed Professor 1 that she was aware of additional instances of unwanted conduct by Student 1 toward women in their program, including unwanted physical touching. She told him what she had either witnessed or been told by other women. She also said that she followed responsible employee policy and reported this information to EOA.

22.

Professor 1 went to Integrative Biology Department Head Bob Mason for guidance on what to do about Devan-Song's reports of harassment of women by Student 1. Department Head Mason instructed Professor 1 to remove Ms. Devan-Song from his lab. He said Professor 1 should do this because of the distress Devan-Song was expressing about Student 1's conduct and Professor 1's inability to handle her reports.

23.

On or about January 15, 2019, Professor 1 informed Devan-Song that he would no longer work with her as her advisor, which meant that she was discharged from his lab and terminated from working on all the research projects he and his other graduate students oversaw. She lost

access to data that she was planning to use for her research and to funding that supported that research. She was forced to change her field of study.

24.

Devan-Song had twelve weeks to find a new advisor or be expelled from her Ph.D. program at OSU. Without an advisor, her legal status to be in the United States would also be revoked. When other women who had been harassed by Student 1 saw what happened to Devan-Song, they became unwilling to follow through with reports to EOA.

25.

As Devan-Song tried to seek a new advisor, Department Head Bob Mason pushed professors to steer her to a different department. He met with Devan-Song's student advocate, Molly Chambers, to try to get Devan-Song to switch to Geography or veterinary medicine. It was only through enormous advocacy for herself that Devan-Song was able to convince another professor in Integrative Biology to take her on as an advisee.

26.

Devan-Song reported to EOA that she had been terminated from Professor 1's lab because of her reports about Student 1. EOA did not respond.

27.

Devan-Song began advocacy and activist work describing her experiences to administrators and others at OSU in hopes that other women and students of color would not have to go through what she went through. She networked with individuals interested in improving the systems and resources for students who experience gender- or race-based harassment and violence, or retaliation.

**28.**

One of the people she worked with was faculty senate president Dwaine Plaza. Plaza submitted a complaint to EOA in April on Devan-Song's behalf. EOA scheduled a meeting with Judy Neighbors (Survivor Advocacy and Resource Center) and Defendant Penelope Daugherty (EOA Interim Director of EO Investigations).

**29.**

In that meeting, Defendant Daugherty patronizingly explained to Devan-Song that Devan-Song had wanted to leave Professor 1's lab and told her that she should not say she was "fired." Devan-Song corrected Daugherty and informed her that she had always wanted to continue in Professor 1's lab. She explained that she was terminated from the lab against her will, because of her reports. Daugherty defended the department's method of ending the problem by discharging Devan-Song from the lab. Devan-Song sent supporting information to Daugherty, but EOA still did not investigate Devan-Song's report of retaliation.

**30.**

On February 17, 2020, Devan-Song received notice from Defendant Daugherty that Student 1 and Professor 1 had complained to EOA that she was talking to people on campus and outside of campus about her experiences of harassment, reporting, and being discharged from Prof. 1's lab. They characterized this as retaliation against them because they had participated in an EOA process. Daugherty opened a full-scale investigation of Devan-Song, hired an outside lawyer to conduct it, and charged Devan-Song with violating the OSU Student Code of Conduct.

**31.**

That investigation is still proceeding. The process has been enormously time-consuming and has sapped Devan-Song's emotional energy and energy for work. It has triggered her trauma.

Page 8 - **COMPLAINT**

Devan-Song has been diagnosed with PTSD in connection with her entire experience, including the ongoing investigation.

32.

On or about October 28, 2020 plaintiff Devan-Song's counsel asked OSU's general counsel, Rebecca Gose, for a tolling agreement so that she would not have to file this lawsuit until she knew the outcome of the ongoing investigations. OSU would not agree to a tolling agreement.

33.

Plaintiff will amend upon the conclusion of the investigation to include further allegations regarding OSU's determination of its charges against Devan-Song.

**FIRST CLAIM FOR RELIEF**
**Retaliation in Violation of Title IX**
**of the Education Amendments of 1972, 20 U.S.C. § 1681**
**Against Oregon State University**

Plaintiff Devan-Song incorporates paragraphs 1-33 as though fully restated here.

34.

Defendant receives federal funds within the meaning of Title IX.

35.

By discharging Devan-Song from her position in Professor 1's lab, denying her the opportunity to work on promising research in her desired field, and jeopardizing her status at the university and in the United States, OSU retaliated against Devan-Song for her good faith reports of gender-based harassment in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681.

**36.**

As a result of defendant's retaliation, Devan-Song has been denied full and equal educational opportunities, including the opportunity to be involved in leading research into the coronavirus. Opportunities like that virus-related research are a large part of why Devan-Song chose to attend OSU and could have advanced her career. She has also suffered emotional distress and loss of future opportunities. These losses are in amounts to be determined by a jury at trial.

**37.**

Defendant has further retaliated in violation of Title IX by charging Devan-Song with violations of the Student Code of Conduct and subjecting Devan-Song to a lengthy and arduous investigation under threat of punitive measures because of her continued reporting of gender-based harassment and retaliation. Devan-Song has been denied full and equal educational opportunities because of this retaliation and may suffer punitive measures.

**38.**

Defendant's actions were taken intentionally and/or in reckless disregard for plaintiff's rights, and punitive damages should be awarded to deter similar conduct in the future.

**39.**

Plaintiff is further entitled to her reasonable attorney fees and costs in pursuing this action.

**SECOND CLAIM FOR RELIEF**
**Retaliation for Exercising First Amendment Rights, 42 U.S.C. § 1983**
**Against OSU (for prospective relief) and Penelope Daugherty (for damages)**

Plaintiff incorporates paragraphs 1-39 as though fully restated here.

**40.**

Devan-Song's storytelling – relating her experience of harassment, reporting it, achieving no resolution and then being terminated from her lab – is a component of her advocacy and activism around improving systems and removing inequities for women in STEM fields. She speaks out as a woman of color and as campus citizen on matters of public concern and matters related to teaching. Defendants' acts of telling her not to describe her experiences as she did; of charging her with violations of the Student Code of Conduct; of investigating and possibly punishing Devan-Song because of her speech amount to retaliation against her for her expressions on matters of public concern, in violation of the First Amendment to the United States Constitution, enforceable through 42 U.S.C. § 1983.

**41.**

Defendants' retaliation would chill people of ordinary firmness from engaging in constitutionally-protected conduct.

**42.**

Plaintiff is entitled to injunctive relief barring any further consequences of its ongoing charges and investigations into Devan-Song's speech and any future investigations or punitive measures aimed at her speech related to her experiences of discrimination and retaliation.

**43.**

As a result of defendants' retaliation, Devan-Song has had to devote scarce time and energy to defending herself rather than engaging in science and advancing her career. She has been re-traumatized and suffered panic attacks, loss of sleep, and other symptoms of PTSD. Numerous administrators, professors, students and other colleagues in her field have been subjected to interviews with a lawyer about her conduct, affecting her professional standing

among those who can have an enormous impact on her future. She has incurred legal fees. The retaliation is ongoing and plaintiff will amend to incorporate further damages once the investigation is concluded. Total losses are in amounts to be determined by a jury at trial.

**44.**

Plaintiff is further entitled to reasonable attorney fees and costs in pursuing this action.

### THIRD CLAIM FOR RELIEF
### Retaliation in Violation of ORS 659.852
### Against OSU

Plaintiff incorporates paragraphs 1-44 as though fully restated here.

**45.**

By discharging Devan-Song from her position in Professor 1's lab, denying her the opportunity to work on promising research in her desired field, and jeopardizing her status at the university and in the United States, OSU retaliated against Devan-Song for her good faith reports of gender-based harassment in violation of ORS 659.852.

**46.**

Defendant has further retaliated in violation ORS 659.852 by charging Devan-Song with violations of the Student Code of Conduct and subjecting her to a lengthy and arduous investigation under threat of punitive measures because of her continued reporting of gender-based harassment and retaliation.

**47.**

Plaintiff is entitled to injunctive relief barring any further consequences of its ongoing charges and investigations into Devan-Song's speech and any future investigations or punitive measures aimed at her speech related to her experiences of discrimination and retaliation.

**48.**

As a result of defendant's retaliation, Devan-Song has been denied full and equal educational opportunities, including the opportunity to be involved in leading research into the coronavirus. Opportunities like that virus-related research are a large part of why Devan-Song chose to attend OSU and could have advanced her career. OSU has also substantially disadvantaged her in academic, employment and extracurricular activities.  She has suffered emotional distress and loss of future opportunities. These losses are in amounts to be determined by a jury at trial.

**49.**

Plaintiff is further entitled to her reasonable attorney fees and costs in pursuing this action.

**FOURTH CLAIM FOR RELIEF**
**Oregon Constitution, Article 1 section 8**
**Against OSU**

Plaintiff incorporates paragraphs 1-49 as though fully restated here.

**50.**

Part of Devan-Song's advocacy and activism around improving systems and removing inequities for women in STEM fields has included telling her story of experiencing harassment, reporting it, achieving no resolution and then being terminated from her lab. Defendants' actions to investigate and possibly punish Devan-Song because of her speech amount to retaliation against her for her expressions in violation of Article 1, section 8 of the Oregon Constitution.

**51.**

Not only do OSU's actions discourage students from telling others their personal experiences of discrimination at the university, it also discourages them from becoming involved

in groups advocating for better treatment of women and people of color in STEM fields, a constitutionally protected activity, because such involvement might expose them to adverse action. The practical effect is to chill speech and other expression and to severely limit open communication by students at public universities.

52.

Plaintiff is entitled to injunctive relief barring any further consequences of its ongoing charges and investigations into Devan-Song's speech and any future investigations or punitive measures aimed at her speech related to her experiences of discrimination and retaliation.

53.

As a result of defendants' retaliation, Devan-Song has had to devote scarce time and energy to defending herself rather than engaging in science and advancing her career. She has been re-traumatized and suffered panic attacks, loss of sleep, and other symptoms of PTSD. Numerous administrators, professors, students and other colleagues in her field have been subjected to interviews with a lawyer about her conduct, affecting her professional standing among those who can have an enormous impact on her future. She has incurred legal fees. The retaliation is ongoing and plaintiff will amend to incorporate further damages once the investigation is concluded. Total losses are in amounts to be determined by a jury at trial.

54.

Plaintiff is further entitled to reasonable attorney fees and costs in pursuing this action.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks judgment against defendants as follows:

(a)     An Order enjoining OSU, its agents, employees, and those acting in concert therewith, from unlawful retaliation because of speech on matters of public concern,

including but not limited to reports of or opposition to discrimination on the basis of sex;

(b)     An award of damages against defendants in amounts to be established at trial;

(c)     An award of punitive damages in an amount sufficient to deter future violations;

(d)     An award of pre- and post-judgment interest;

(e)     An award of costs and attorney fees, pursuant to 42 U.S.C. § 1988(b) and ORS 659A.885; and

(f)     Such other relief as is just and equitable.


DATED this 7th day of December, 2020.

JOHNSON JOHNSON LUCAS & MIDDLETON PC

/s/Jennifer J. Middleton
**Jennifer J. Middleton**, OSB No. 071510
jmiddleton@justicelawyers.com
**Caitlin V. Mitchell,** OSB No. 123964
cmitchell@justicelawyers.com
975 Oak Street, Suite 1050
Eugene, OR 97401
Tel: (541) 484-2434
Fax: (541) 484-0882
Attorneys for Plaintiff