**Jennifer J. Middleton**, OSB No. 071510
jmiddleton@justicelawyers.com
**Caitlin V. Mitchell**, OSB No. 123964
cmitchell@justicelawyers.com
JOHNSON JOHNSON LUCAS & MIDDLETON PC
975 Oak Street, Suite 1050
Eugene, OR 97401
Tel: 541-484-2434
Fax: 541-484-0882
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

ELIZABETH ANNE DEVAN-SONG,

Plaintiff,

v.

OREGON STATE UNIVERSITY, F. KING ALEXANDER, PENELOPE DAUGHERTY, and CAROL MILLIE

Defendants.

Case No.: 6:20-cv-02126-MC

**FIRST AMENDED COMPLAINT**

Violation of Title IX, 20 U.S.C. § 1681; U.S. Const., Amendment 1; ORS 659.852; Oregon Const. Article 1, section 8; ORS 659A.370

Demand for Jury Trial

**INTRODUCTORY STATEMENT**

**1.**

After Plaintiff Anne Devan-Song disclosed that a fellow graduate student had engaged in sexual and gender-based harassment, Defendant Oregon State University (OSU) failed to resolve Devan-Song's complaint. Instead, it tried to end the problem by discharging her from the lab where she worked with the harasser and terminating her advisor/advisee relationship with the professor who advised them both. Plaintiff Devan-Song responded by speaking truthfully about her experiences with her friends, with other students, and with teachers and administrators in an

effort to advocate for systemic change at OSU. OSU then suspended Devan-Song for speaking out about what happened to her. This is an action against OSU for retaliation in violation of Title IX, the First Amendment, and the Oregon Constitution and laws.

## JURISDICTION & VENUE

**2.**

This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2).

## PARTIES

**3.**

Plaintiff Anne Devan-Song is a Ph.D. candidate and teaching assistant at Oregon State University in its department of Integrative Biology. She is a citizen of Singapore and a resident of Corvallis, Oregon. She is multi-racial, of Asian descent.

**4.**

Defendant Oregon State University is a public university in Corvallis, Oregon. It receives federal funding and is also financed in part by monies appropriated by the Oregon Legislative Assembly.

**5.**

Defendant F. King Alexander is the President of Oregon State University. He is sued in his official capacity for prospective relief only.

**6.**

Defendant Penelope Daugherty at material times was the Interim Director of EO Investigations within the Office of Equal Opportunity and Access at Oregon State University. She is sued in her individual capacity.

**7.**

Carol Millie is the Director of Student Conduct and Community Standards at Oregon State University. She is sued in her official and individual capacities.

**FACTUAL ALLEGATIONS**

**8.**

Plaintiff Anne Devan-Song came to Corvallis to pursue her Ph.D. in Integrative Biology at Defendant OSU. She selected OSU because Professor Benjamin Dalziel, who studies disease and movement ecology, recruited her to work with him. She was eager to study collective behavior and the ecology of cities, particularly from a disease perspective. She was excited by Dalziel's movement ecology and complex systems research, the start-up funding he had available for research, and data sets that he had available to study. .

**9.**

Devan-Song was assigned a two-person office to share with Noah Silva, another graduate student in the Prof. Dalziel's lab. Within the first few weeks, Devan-Song noticed Silva behaving in overly sexualized ways toward women in the department, including unwanted physical touching. She became highly uncomfortable around him and on guard.

**10.**

Devan-Song moved out of their shared office because of her discomfort and worked instead in the shared lab space a few doors down the hall.

**11.**

For the next several months, Silva displayed persistent, unwanted, harassing, and controlling behaviors toward Devan-Song. He repeatedly insisted that she move back into their office. He demanded she spend a weekend with him cleaning the office. He re-arranged what had been her desk in the office and moved the furniture around. He repeatedly questioned why she

moved out and would not return. He asked her friends why she moved. He had her friends wait for her in his office so that she would have to come inside in order to see them. He followed her into the lab, peered at her through the glass, and called or facetimed her when she was working in the lab, forcing her to interact with him. He told her to give him her homework, because he wanted to complete it for her.

**12.**

Silva did not treat male graduate students with such persistent, unwanted attention or demands.

**13.**

Devan-Song dropped classes to avoid being in the same room as Silva. She decided not to pursue a minor in Biological Data Science because he was also taking it. She avoided social situations where he would be present. She hoped to minimize contact so that they could both successfully occupy Prof. Dalziel's lab over the next five years.

**14.**

In or around March 2018, Devan-Song went to Prof. Dalziel, their shared advisor, for assistance in managing the harassment she was experiencing from Silva. She reported his stalking-like, controlling behaviors and how distressing they were to her. Dalziel defended Silva, saying "he just likes you," and, "he has a different love language from you."

**15.**

Prof. Dalziel advised Devan-Song that she needed to communicate her boundaries to Silva. She attempted to do this, but it only made the situation worse. It suggested the problem was her fault for not having communicated effectively and that she needed to take care of Silva's hurt feelings. She became afraid of interacting with Silva.

**16.**

Devan-Song followed up with Prof. Dalziel and told him it did not go well. He responded with hostility. He told her she should not have reported the harassment to him and that it was not "real" sexual harassment. He said he felt very protective of Silva and that she was "overthinking" things. He said she had put him and his lab in a difficult position by telling him about Silva's conduct toward her.

**17.**

OSU policy requires "responsible employees," including Prof. Dalziel, to report gender-based harassment to OSU's Equal Opportunity & Access, but Dalziel did not report. Instead, Dalziel continued encouraging contact and scheduled them to be together in the lab.

**18**.

Devan-Song's mental health deteriorated. She displayed symptoms of trauma, experienced sleeping and eating disorders, depression, anxiety, and suicidal thoughts. She sought out counseling. She went to other professors in the department who successfully moved her into a different office and made sure she did not have to teach with Silva.

**19.**

In or around August 2018, Devan-Song went to EOA and reported the harassment. EOA associate Hope Brian told Devan-Song that what she described was "textbook" sexual or gender-based harassment and wrote up the intake as a Title IX report of sexual or gender-based harassment.

**20**.

Devan-Song did not request a formal investigation but instead opted for an informal resolution. She did not want any punitive measures taken toward Prof. Dalziel or Silva and wanted to maintain a good working relationship with Dalziel.

**21.**

EOA allowed Silva to work with Prof. Dalziel to come up with terms for his interactions with Devan-Song and hers with him, which was alarming to Devan-Song. EOA made a proposal for a "voluntary resolution agreement." Devan-Song did not want to sign it immediately, but she asked EOA for an electronic copy so she could work with it and understand it better. She proposed a restorative justice session. EOA did not provide an electronic copy and did not respond to Devan-Song's proposal for restorative justice. Instead, EOA closed the case in late November 2018.

**22.**

On or about December 1, 2018, Prof. Dalziel gave Devan-Song an excellent annual review of her academic progress and wrote that he enjoyed collaborating with her on research projects.

**23.**

On or about January 8, 2019, Devan-Song informed Prof. Dalziel that she was aware of additional instances of unwanted conduct by Silva toward women in their program, including unwanted physical touching. She told him what she had either witnessed or been told by other women. She also told Dalziel that she followed responsible employee policy and reported this information to EOA.

**24.**

Prof. Dalziel went to Integrative Biology Department Head Bob Mason for guidance on what to do about Devan-Song's reports of harassment of women by Silva. Department Head Mason instructed Dalziel to remove Devan-Song from his lab. He said Dalziel should do this because of the distress Devan-Song was expressing about Silva's conduct and Dalziel's inability to handle her reports.

**25.**

On or about January 15, 2019, Prof. Dalziel informed Devan-Song that he would no longer work with her as her advisor, which meant that she was discharged from his lab and terminated from working on all the research projects he and his other graduate students oversaw. She lost access to data that she was planning to use for her research and to funding that supported that research. She was forced to change her field of study.

**26**.

Devan-Song had twelve weeks to find a new advisor or be expelled from her Ph.D. program at OSU. Without an advisor, her legal status to be in the United States would also be revoked. When other women who had been harassed by Silva saw what happened to Devan-Song, they became unwilling to follow through with reports to EOA.

**27.**

As Devan-Song tried to seek a new advisor, Department Head Mason pushed professors to steer her to a different department. He met with Devan-Song's student advocate, Molly Chambers, to try to get Devan-Song to switch to Geography or veterinary medicine. It was only through enormous advocacy for herself that Devan-Song was able to convince another professor in Integrative Biology to take her on as an advisee.

**28.**

Devan-Song reported to EOA that she had been terminated from Prof. Dalziel's lab because of her reports about Silva. EOA did not offer her the opportunity to file a formal complaint or initiate an investigation.

**29.**

Devan-Song began advocacy and activist work describing her experiences to administrators and others at OSU in hopes that other women and students of color would not

have to go through what she went through. She networked with individuals interested in improving the systems and resources for students who experience gender- or race-based harassment and violence, or retaliation. In many of these conversations, she told her own story of being harassed, reporting to EOA, finding the process ineffective, and then being terminated from her lab. She used her personal story as part of her advocacy for improved systems and efforts to retain women of color in STEM fields.

**30.**

One of the people Devan-Song worked with was faculty senate president Dwaine Plaza. Plaza submitted a complaint to EOA in April on Devan-Song's behalf. EOA scheduled a meeting with Judy Neighbors (Survivor Advocacy and Resource Center) and Defendant Penelope Daugherty (EOA Interim Director of EO Investigations).

**31.**

In that meeting, Defendant Daugherty patronizingly explained to Devan-Song that Devan-Song had wanted to leave Prof. Dalziel's lab and told her that she should not say she was "fired." Devan-Song corrected Daugherty and informed her that she had always wanted to continue in Dalziel's lab. She explained that she was terminated from the lab against her will, because of her reports. Daugherty defended the department's method of ending the problem by discharging Devan-Song from the lab. Devan-Song sent supporting information to Daugherty, but EOA still did not investigate Devan-Song's report of retaliation.

**32.**

On February 17, 2020, Devan-Song received notice from Defendant Daugherty that Silva and Prof. Dalziel had complained to EOA that she was reporting to people on campus and outside of campus her experiences of harassment, going to EOA, and being discharged from

Dalziel's lab. They characterized this as retaliation against them because they had participated in an EOA process.

**33.**

Prof. Dalziel's charges against Devan-Song were that she made "false statements" to multiple people that she was fired from his lab in retaliation for her reports to EOA and that she advocated that graduate students, especially "brown women," should not be fired.

**34.**

Silva's charges against Devan-Song were that she made "false representations" about his actions to multiple people, and as a result he was excluded from activities.

**35.**

Daugherty opened a full-scale investigation of Devan-Song, hired an outside lawyer to conduct it, and charged Devan-Song with violating the OSU Student Code of Conduct.

**36.**

The investigation and determination of those charges continued for eleven months. The process was enormously time-consuming and sapped Devan-Song's emotional energy and energy for work. It triggered her trauma. Devan-Song was diagnosed with PTSD in connection with her entire experience, including the lengthy investigation.

**37.**

On December 18, 2020, Defendant Carol Millie, Director of Student Conduct and Community Standards, found Devan-Song responsible for harassing and retaliating against Silva in violation of the student code of conduct. She determined that Devan-Song's repeated use of the terms "sexual harasser," "sexual harassment," and "sexual misconduct" in describing her experience with Silva, and her expression of the opinion that he should be removed from the Department, violated the school code. The investigation had not looked into whether Devan-

Song's use of the terms was accurate, and Defendant Millie expressly found that the truth or falsity of the terms was not relevant. She imposed a deferred suspension for a year, with the deferral contingent on a determination that Devan-Song did not continue to violate the code of conduct.

**38.**

On January 22, 2021, Defendant Millie found Devan-Song responsible for harassing and retaliating against Prof. Dalziel in violation of the student code of conduct. She determined that Devan-Song's repeated use of the words "fired," "terminated," and "retaliated against" in describing her removal from Prof. Dalziel's lab, and her statement, "don't fire brown women," violated OSU policies. Again, the investigation did not look into whether the terms accurately described what had happened, and Defendant Millie expressly found that the truth or accuracy of Devan-Song's speech was not relevant. She suspended Devan-Song for a year with any readmission contingent on a determination that Devan-Song did not continue to violate the code of conduct.

**39.**

Neither of the findings pointed to specific instances of speech that violated the code. They instead relied on general findings that Devan-Song had used the terms repeatedly to multiple people.

**40.**

Devan-Song appealed her suspension and is awaiting a decision.

**FIRST CLAIM FOR RELIEF**
**Retaliation in Violation of Title IX**
**of the Education Amendments of 1972, 20 U.S.C. § 1681**
**Against OSU**

Plaintiff Devan-Song incorporates paragraphs 1-40 as though fully restated here.

**41.**

Defendant receives federal funds within the meaning of Title IX.

**42.**

OSU discharged Devan-Song from her position in Professor Dalziel's lab, denying her the opportunity to work on promising research in her desired field, and jeopardizing her status at the university and in the United States, because of her reports of sexual and gender-based harassment by Silva and her distress in connection with the experience. OSU retaliated against Devan-Song for her good faith reports of gender-based harassment in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681.

**43.**

As a result of defendant's retaliation, Devan-Song has been denied full and equal educational opportunities, including the opportunity to be involved in leading research into the coronavirus. Opportunities like that virus-related research could have advanced her career and are a large part of why Devan-Song chose to attend OSU. She has also suffered emotional distress and loss of future opportunities. These losses are in amounts to be determined by a jury at trial.

**44.**

Defendant further retaliated in violation of Title IX by charging Devan-Song with code of conduct violations and suspending her for truthfully telling her story. The charges were made for the purpose of stopping her from continuing her reports and complaints of sex discrimination, gender-based harassment and retaliation at OSU, and thereby interfere with her rights under Title IX.

**45.**

Defendant's retaliation has resulted in denying Devan-Song the opportunity to continue her Ph.D. at OSU, disrupted her professional progress, caused her to lose her income as a teaching assistant, and could have a profound impact on her future employability. By suspending Devan-Song, OSU terminated the conditions necessary for her legal authorization to remain in this country. She may be forced to return to an uncertain future in Singapore.

**46.**

Defendant's actions were taken intentionally and/or in reckless disregard for plaintiff's rights, and punitive damages should be awarded to deter similar conduct in the future.

**47.**

Plaintiff is further entitled to her reasonable attorney fees and costs in pursuing this action.

**SECOND CLAIM FOR RELIEF**
**Retaliation for Exercising First Amendment Rights, 42 U.S.C. § 1983**
**Against F. King Alexander (for prospective relief),**
**Penelope Daugherty and Carol Millie (for damages)**

Plaintiff incorporates paragraphs 1-47 as though fully restated here.

**48.**

Devan-Song's storytelling – relating her experience of harassment, reporting it, achieving no resolution and then being terminated from her lab – is a component of her advocacy and activism around improving systems and removing inequities for women in STEM fields. She speaks out as a woman of color and a campus citizen on matters of public concern and matters related to teaching. Defendants Daugherty's and Millie's acts of telling her not to describe her experiences as she did; of finding her responsible for violations of the student code of conduct; and of investigating and suspending Devan-Song because of her speech retaliate against her for

her protected expression, in violation of the First Amendment to the United States Constitution, enforceable through 42 U.S.C. § 1983.

**49.**

Defendants' retaliation would chill people of ordinary firmness from engaging in constitutionally-protected conduct.

**50.**

By conditioning Devan-Song's return to OSU on a finding that she has not engaged in further violations of the student code of conduct, OSU has placed an unconstitutional prior restraint on Devan-Song's protected speech.

**51.**

Plaintiff is entitled to injunctive relief restoring her to good standing at OSU; rescinding her suspension and other consequences for her protected speech; and barring any restrictions on her speech related to her experiences of discrimination and retaliation.

**52.**

OSU suspended Devan-Song within months of defending her dissertation and receiving her degree, causing her to lose her legal authorization to be in this country. She is forced either to start over again somewhere else at great expense or submit to an overbroad restriction on her speech with no guarantee that she will be able to complete her degree. As a result of defendants' retaliation, Devan-Song had to devote scarce time and energy to defending herself rather than engaging in science and advancing her career. She has been re-traumatized and suffered panic attacks, loss of sleep, and other symptoms of PTSD. Total losses are in amounts to be determined by a jury at trial.

**53.**

Defendant's actions were taken intentionally and/or in reckless disregard of plaintiff's rights, and punitive damages should be awarded to deter similar conduct in the future. Plaintiff is further entitled to reasonable attorney fees and costs in pursuing this action.

**THIRD CLAIM FOR RELIEF**
**Retaliation in Violation of ORS 659.852**
**Against OSU**

Plaintiff incorporates paragraphs 1-53 as though fully restated here.

**54.**

Devan-Song told her story of harassment and retaliation to people who were in a position to make change at OSU, and others. She related experiences of what she believed to be violations of Title IX and other laws and regulations as a way of explaining why OSU's systems needed to change. OSU suspended her for doing so. This retaliation violates ORS 659.852.

**55.**

Plaintiff is entitled to injunctive relief barring any further consequences of its ongoing charges and investigations into Devan-Song's speech and any future investigations or punitive measures aimed at her speech related to her experiences of discrimination and retaliation.

**56.**

Through its retaliation, OSU has substantially disadvantaged Devan-Song in academic, employment and extracurricular activities. She has suffered emotional distress and loss of future opportunities. These losses are in amounts to be determined by a jury at trial.

**57.**

Plaintiff is further entitled to her reasonable attorney fees and costs in pursuing this action.

**FOURTH CLAIM FOR RELIEF**
**Oregon Constitution, Article 1 section 8**
**Against OSU**

Plaintiff incorporates paragraphs 1-57 as though fully restated here.

**58.**

Part of Devan-Song's advocacy and activism around improving systems and removing inequities for women in STEM fields has included telling her story of experiencing harassment, reporting it, achieving no resolution and then being terminated from her lab. OSU's punishment of Devan-Song because of her speech is retaliation against her for her expressions in violation of Article 1, section 8 of the Oregon Constitution.

**59.**

OSU's actions discourage students from telling others their personal experiences of discrimination at the university. They also discourage students from becoming involved in groups advocating for better treatment of women and people of color in STEM fields -- a constitutionally protected activity -- because such involvement might expose them to adverse action. The practical effect is to chill speech and other expression and to severely limit open communication by students at public universities.

**60.**

Plaintiff is entitled to injunctive relief restoring her to good standing at OSU and barring any further punitive measures aimed at her speech related to her experiences of discrimination and retaliation.

**61**.

Plaintiff is further entitled to reasonable attorney fees and costs in pursuing this action.

**FIFTH CLAIM FOR RELIEF**
**Violation of ORS 659A.370**
**Against OSU**

Plaintiff incorporates paragraphs 1-61 as if fully restated here.

**62.**

Devan-Song is a teaching assistant and employee of OSU, in addition to being a student.

**63.**

By finding that Devan-Song's communication of her experiences of sexual and gender-based harassment and retaliation violated the student code of conduct, suspending her, and requiring that she not engage in further such violations as a condition of return, Defendant has imposed a non-disclosure requirement on Devan-Song.

**64.**

As a condition of employment and future employment, Devan-Song was and continues to be prohibited from discussing conduct that constitutes sex discrimination that occurred in the workplace. This prohibition violates ORS 659A.370.

**65.**

Plaintiff is entitled to injunctive relief restoring her to good standing at OSU and barring any further punitive measures aimed at her speech related to her experiences of discrimination and retaliation.

**66.**

OSU's interpretation of its code of conduct to require non-disclosure of experiences of discrimination and retaliation has had devastating effects on Devan-Song. OSU suspended Devan-Song within months of defending her dissertation and receiving her degree, causing her to lose her legal authorization to be in this country. She is forced either to start over again somewhere else at great expense or submit to an overbroad restriction on her speech with no

guarantee that she will be able to complete her degree. She lost her teaching position. She had to devote scarce time and energy to defending herself rather than engaging in science and advancing her career. She has been re-traumatized and suffered panic attacks, loss of sleep, and other symptoms of PTSD. Total losses are in amounts to be determined by a jury at trial.

**67.**

Plaintiff is further entitled to reasonable attorney fees and costs in pursuing this action.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks judgment against defendants as follows:

(a) An order enjoining OSU, its agents, employees, and those acting in concert therewith, from unlawful retaliation because of protected speech, including but not limited to reports of or opposition to discrimination on the basis of sex;

(b) An award of damages against defendants in amounts to be established at trial;

(c) An award of punitive damages in an amount sufficient to deter future violations;

(d) An award of pre- and post-judgment interest;

(e) An award of costs and attorney fees pursuant to 42 U.S.C. § 1988(b) and ORS 659A.885; and

(f) Such other relief as is just and equitable.

DATED this 19th day of February, 2021.

JOHNSON JOHNSON LUCAS & MIDDLETON PC

/s/Jennifer J. Middleton
**Jennifer J. Middleton**, OSB No. 071510
jmiddleton@justicelawyers.com
**Caitlin V. Mitchell,** OSB No. 123964
cmitchell@justicelawyers.com
975 Oak Street, Suite 1050
Eugene, OR 97401
Tel: (541) 484-2434 Fax: (541) 484-0882
Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I certify that on February 19, 2021, a true copy of the **FIRST AMENDED COMPLAINT** was served as indicated below:

**Melissa Healy**
Stoel Rives LLP
760 SW Ninth Ave. Ste. 3000
Portland, OR 97205
Tel: 503-294-9263
mjhealy@stoel.com

Attorney for Oregon State University, F. King Alexander, Penelope Daugherty, and Carol Millie

[ ] U.S. Mail
[ X ] Electronic Filing
[ ] Email
[ ] Fax

JOHNSON JOHNSON LUCAS & MIDDLETON, PC

Jaclyn R. Hayes, Legal Assistant
541/484-2434
541/484-0882 fax
jhayes@justicelawyers.com